Next case on the calendar is Alanis Garcia, and are we referring to him as Mr. Garcia or Mr. Alanis? Mr. Garcia. Mr. Garcia, yes. Okay. Counsel, go ahead. Good morning, Your Honors. Deputy Attorney General Jennifer Jadavitz for Respondent Appellant. The United States Supreme Court has repeatedly emphasized that when there is room for fair-minded disagreement, a state court's determination that a claim lacks merit precludes federal habeas relief. And that is exactly the situation we have in this case. The court in Davis said, when a reasonable officer, in light of the circumstances, would have understood that a suspect might be invoking his or her right to silence, their precedents do not require that questioning cease. Thereafter, the court in Smith said that events preceding the response can create ambiguity and make the response equivocal. In this case, the state court of appeal, in accordance with Davidson-Smith, reasonably determined that based on the circumstances leading up to Mr. Garcia's response, a reasonable officer would have understood that Mr. Garcia might only have been intending to invoke his right to silence. Counsel, you're talking about what the Supreme Court has repeatedly said. I'd like to quote what Justice Kennedy said in Burgess. Tompkins did not say that he wanted to remain silent or that he did not want to talk with the police. Had he made either of these simple, unambiguous statements, he would have invoked his right to cut off questioning. What could be clearer than that? He said, the officer said, in light of your Miranda warnings, do you want to talk to us? And he said, no. That seems to fit squarely within Burgess. Why does it not? He had invoked, if he had made a simple, unambiguous statement of he did not want to talk to the police, which is what Mr. Garcia did, that would have invoked his right to cut off questioning. The answer to your question, Your Honor, is that under the circumstances, we have to look at the response in the context and circumstances of the response in and of itself. We don't look at his response in isolation. Where does that say that in Justice Kennedy's quote? It doesn't say that in his quote, but it certainly says that in Davis, Your Honor, where in Davis they said that you look at the circumstances leading up to the response to determine whether reasonable officers would know that he might be intending to invoke his right to silence. So we don't look at the- Well, what could be ambiguous about the word no? What can be ambiguous about the word no is not the word no itself, but whether he intended to invoke his right to silence. We're looking at what Mr. Garcia intended to do by eliciting that response. And what we're looking at is the circumstances proceeding up to that response. And in this particular case, you have a colloquy with the officers and Mr. Garcia, which sometimes his no's weren't necessarily firm no's. He would answer the question no and then qualify it with a responsive no and an explanation. In all of those cases, the officer, the interrogator, Detective Beatty, gave a reflective no. So when Mr. Garcia said no, Mr. Beatty would say no. And he said, well, okay, maybe I did. But all of those were related to historical facts. All of them were ways of sort of probing or questioning whether he had ever used another name, whether he had ever been arrested. And this is a different circumstance. He's being asked whether he wants to invoke his right to remain silent or to have counsel present. And he says, okay, do you want to talk to me? No. Why does he get to use a reflective no in those circumstances? Because the circumstances that you just discussed are relevant to the officer's understanding of Mr. Garcia's intent when he responds to questions. And what we're looking at is whether Mr. Garcia intended to invoke his right to silence. So we have to look at the preceding circumstances and everything around that leading up to that point to determine whether an officer, a reasonable officer in Detective Beatty's position, would understand that he might be invoking his right to silence. There was no misunderstanding. The detective immediately thereafter said, you don't want to talk to us because you don't know what the charges are. There was no ambiguity. He understood. And the prior questions, as Judge Bivey said, were historical questions. And the way the questions were framed and the answers given, there was, in fact, some ambiguity built into the question and answer. He was asked, do you ever use a different name? And he said no. And then he said, a long time ago I did. That's not no doesn't mean no. He was answering an ambiguous question. On the arrest, he never said he was arrested. He was asked if he was arrested. He said no. And then he said, I was detained. But then he goes on to say, but I was not arrested. Now, we may legally think he was arrested, but he gave an honest answer. And then he gets his Miranda warnings. And then he's told, asked the question, in light of this, do you want to talk to us? No. End of the questioning. With all due respect, Your Honor, the preceding statements, nonetheless, can be viewed and were properly viewed by the state court to determine, under the Davis standard, whether the officers reasonably would have understood that Mr. Garcia was invoking his right to counsel. And with respect to his response to the detective's no, it was Mr. Garcia, not the detective, who said no because I want to understand what the charges are. Right, but I don't see anything, when I read Miranda, that suggests that an officer can seek clarification by continuing to ask him questions in order to keep him going. We're sort of priming the pump here. And so once the officer sort of says, well, can you explain to me why you answered no? Then he'll say, well, no, because I don't really understand what the charges are. Well, that's not within the scope of Miranda. Because then the officers could always ask somebody who had given an unambiguous, absolutely, I do not wish to speak to you under any circumstances. No? You really don't want to? Yeah, because I don't understand what's going on. Well, let me explain to you what's going on now. Will you talk to us? That's an easy violation of Miranda, I think. With all due respect, Your Honor, I think that's an assumption that the response in question here was not ambiguous. And the argument that the people are making is that it was ambiguous, and therefore the officers' responsive no and Mr. Garcia's no because I don't want to talk, and then a few clarifying questions were perfectly permissible under Davis. That's not what the transcript reflects, counsel. Do you have the transcript there? I do, Your Honor. Okay. He's told by Beatty you have the right to remain silent, and so on. Okay, do you understand that? Right. Okay, now having that in mind, do you wish to talk to me? Answer, no. No. No, because I don't want to. I don't know. I don't know what is these charges. So it was Garcia, not Beatty, who injected the explanation, and Beatty understood it. Or Lenton did. Well, you don't want to talk to us because you don't know the charges. You just said you didn't want to talk to us because you don't know what we're going to talk to you about. Okay? Correct. And I would say under Salinas, Your Honor, is that the questions posed by the officers after that, they do not, whether his response was an invocation of his right to counsel, do not turn on those officers' questions. We have to, once again, look at the totality of the circumstances with respect to the proceedings leading up to that, Are the officers entitled to ask somebody who answers them no what the reason is? I mean, if Garcia says, no, I don't want to talk to you because it's Tuesday, has he invoked it any less than saying, no, because I wish to stand on my constitutional rights? Possibly under the circumstances, Your Honor. Really? If I say, no, I absolutely don't want to talk to you, and you say, well, why don't you want to talk to me? I say, because it's Wednesday. But that's not what happened here. I agree, but he answers no a second time. Garcia says, no, I don't want to because I don't understand what the charges are. And the officers then take that as an invitation to open the whole thing up. Well, I don't think they take it as an invitation to open the whole thing up. What they're trying to do in this circumstance is understand whether he truly intends to invoke his right to silence. And under Smith and Davis, what happened here was completely proper, and it's why the state court's determination was reasonable. And the cases of Marshall, Pitts, Forte, and Johnson, as discussed in the briefing, underscores the Court of Appeals decision, and they illustrate why in this particular circumstances reasonable minds can differ and why federal habeas relief is precluded. I see that my time is almost up. If the court doesn't have any more questions, I'd like to reserve the last minute. You're actually over time. Oh, I'm sorry. We've taken quite a bit of your time. I will afford you a minute for a reply. Thank you. May it please the Court? Margo Ricconi for Mr. Garcia. In this case, we're looking at whether no means no in the context of a Miranda colloquy where the officer said, now having basically having your rights in mind, do you wish to speak with me? And Mr. Garcia said no. The district court correctly concluded, and it seems that both sides agree, that this no was facially unambiguous. In Smith v. Illinois, you can look at the events preceding a colloquy to see a purported invocation to see whether or not there's any ambiguity. But also looking at the nuances inherent in the response itself would be relevant. And as this court has been pointing out, there is no equivocal language here with respect to what Mr. Garcia said. He didn't say maybe I should speak to a lawyer or maybe I should invoke my right. He didn't make any of those types of comments. With respect to the preceding questions, I agree with the Court that these really aren't the types of questions that go to whether or not Mr. Garcia, the identifying questions, the booking questions. They don't go to the question of whether or not he desired to speak with the officers. So his manner of using the word no is not really something to evaluate here. However, since the state court did do so. So are you arguing that the state court's determination of the ambiguity in those prior answers is an unreasonable finding of fact or unreasonable application or both? This court said in Sessoms v. Grounds and Anderson v. Terhune that the finding with respect to ambiguity would be the state court's analysis of it could be an unreasonable determination of fact in light of the evidence presented. And here the evidence would be the transcript. You seem to be arguing, though, that in light of Smith and the distinction between the questions, it was an unreasonable application of Smith. Well, an unreasonable application of Smith. Actually, Smith, our argument is that the state court's determination was contrary to Smith because it allowed, when the state court said further ambiguity was cast. So with respect to Smith, we're saying that. It would be a D-1 as opposed to a D-2. Yes, right. You're arguing both. Yeah, I'm arguing both. I don't think we need to show the state court decision was erroneous under AEDPA in every single possible way. But, yes, we are arguing both of those things. And the district court also used the contrary to Prong to say that the court had applied an opposite, basically opposite law to Smith, which says that you cannot use subsequent responses to cast doubt. Well, that's subsequent. I'm talking about preceding. I'm not sure. I don't know if there's any dispute between you about whether they could use the subsequent answers. That's clearly, it seems, settled. Yes, Your Honor, it's clearly settled. And I think under Smith, yes, they can use preceding statements or behavior. But as this Court's already pointed out, it really should pertain to the desire to speak as opposed to just speaking. That sounds like an unreasonable application. But anyway. Yes, and sure. We'll go with either or both. I think both are in the briefing. I'm asking because the district court, I think, found it was unreasonable fact-finding as well. Yes, it did. Yes, Your Honor. With respect to, and I don't think we really need to get to the second response, but Mr. Garcia says, no, because I don't want to. When the reflexive no is asked by Officer Beatty, he says, no, because I don't want to. I don't know what to, what is these charges. I think even if you look beyond what you're really technically allowed to do under Smith, Mr. Garcia didn't want to speak to them. He was reminding them of his rights, saying, but you said I have a right to remain. He didn't remember the word silent. You said I have the right to remain until I get a lawyer. So the appellant in its opening brief says that the officers were very cautious and respectful of the Miranda rights, and they kept reminding him of his rights. In fact, they didn't. It was Mr. Garcia who kept reminding them of his rights. He was clearly trying to invoke in this case. And the erroneous admission of the confession and also the subsequent apology letter that the officers had him create, that was a letter they said that he should write so that it would help him and it would help Jane Doe and it would help him get things off his chest. And that letter, I'm sure, never made it into the hands of Jane Doe. It made it to the hands of the prosecutor. Under these circumstances, the error was not harmless. A confession, of course, is one of the most damaging evidence that can be presented against a defendant, and the prosecutor here used it quite extensively in this sort of he said, she said scenario. The victim was cross-examined at length. There was no physical evidence against Mr. Garcia, and Jane Doe had previously accused her father of abuse, physical abuse. And the grandmother testified that she did not believe Jane Doe, that this allegation that Jane Doe made was actually true. Also, the prosecutor was able to use the adamant denials that Mr. Garcia made and also some of the admissions he did admit to three different instances of sexual contact with Jane Doe. And he was able to use all of this, all the statements that Mr. Garcia made with regard to the sexual contact, to describe him as a sexual deviant three times he described him that way. And taking all this together, he was able to basically convict Mr. Garcia with guilt by implication, at least on the rape charges. So the court must exercise extreme caution before determining that admission of confession at trial was harmless because of how damaging it is. And the confession and apology letter was a product of the officer's Fifth Amendment violation, and its erroneous admission had a substantial and injurious effect on the verdict. And if there are no further questions, I will submit. Thank you. Thank you, Ms. Marconi. Ms. Jadavitz, I'll allow you another minute. Thank you, Your Honors. I just want to reiterate that, once again, this transcript and the colloquy between the detectives and Mr. Garcia is open to reasonable interpretation, and fair-minded jurists could disagree as to whether or not Mr. Garcia intended to invoke his right to counsel. If we disagree with you on that point, is the error harmless? Yes, Your Honor. It's still harmless? Yes, based on the... The admission of his confession was harmless error? Yes, based on the evidence of the victim's testimony, which described in detail the acts that Garcia committed upon her. That shows that the evidence surely was sufficient to convict him, but does it show that it's overwhelming and, therefore, nothing that he could have said added to his predicament? Well, in light of the fact that the comments that he did make after he agreed to speak to the officers, he often and repeatedly denied any touching of the victim in this case before she was 14, which was the subject of the elements of the crimes in the Counts 2 through 9 in the Lewd and Lascivious Acts. So he denied consistently even touching her at all before she was 15 years old, and then he denied raping her. So to that extent, the confession would be almost deemed having to have made inculpatory statements that would have been in his favor. So that, in conjunction with his implicit adoptive admission to his former wife when she confronted him, the evidence of that, under all these circumstances, it would be our position that any error in the admission of the confession would be harmless under breadth. Once again, just to reiterate, the cases of Pitts, Forte, Johnson, and Marshall all underscore the State Court of Appeals determination in this case that Garcia did not intend to invoke his right to counsel, and therefore, because we have a situation where we can show, in fact, that fair-minded jurists could disagree on this issue, federal habeas relief is precluded. Unless the Court has any questions, respondent would submit. Thank you very much. Thank both counsel for the argument. Garcia v. Long is submitted.
judges: Foote, Fisher, Bybee